UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK                FOR PUBLICATION

In re:

DEBRA EASLEY-BROOKS,

Chapter 7

Case No. 08-12520 (MG)

Debtor.

**MEMORANDUM OPINION GRANTING MOTION TO REOPEN CHAPTER 7 CASE**

*A P P E A R A N C E S:*

BECKER GLYNN, MUFFLY, CHASSIN & HOSINSKI LLP
*Attorneys for Debtor*
299 Park Avenue
New York, New York 10171
By:    Alec P. Ostrow, Esq.
       Chester B. Salomon, Esq.

MARTIN CLEARWATER & BELL LLP
*Attorneys for Allen B. Chefitz, M.D.*
220 East 42nd Street
New York, New York 10017
By:    Barbara D. Goldberg, Esq.
       Olga Nikiciuk, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

       Debra Easley-Brooks ("Brooks") moves pursuant to section 350(b) of the Bankruptcy

Code, Rule 5010 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Local Bankruptcy Rule 5010-1 to reopen a chapter 7 case (the "Motion").  (ECF Doc. # 20.)

Brooks seeks to reopen the case to include a medical malpractice action in her schedule of assets

to enable the chapter 7 trustee to prosecute the malpractice action for the benefit of creditors and

Brooks (to the extent of any exemption and surplus).  Allen B. Chefitz ("Chefitz"), a defendant

in a now-dismissed malpractice action that Brooks filed in New York Supreme Court (dismissed

on the basis that Brooks lacked standing to prosecute the claims because they were property of Brooks' chapter 7 estate), opposes the motion to reopen the chapter 7 case, asserting that the defendants will be prejudiced by the reopening and that creditors will not benefit from reopening the case (the "Answer"). (ECF Doc. # 25.) Brooks replied to the objection asserting that Chefitz is not a creditor and lacks standing to object (the "Reply"). (ECF Doc. # 28.)

The Court held a hearing on the Motion on February 11, 2013. At the conclusion of the hearing, the Court granted the Motion and indicated that an opinion would follow explaining the basis for the ruling. On February 14, 2013, an Order was entered granting the Motion (ECF Doc. # 31); on February 19, 2013, the U.S. Trustee filed a notice of appointment of John Pereira as the chapter 7 trustee (ECF Doc. # 32).

## I.   BACKGROUND

Brooks filed a voluntary petition under chapter 13 of the Bankruptcy Code on July 2, 2008. (ECF Doc. # 1.) A plan was confirmed on November 5, 2008. (ECF Doc. # 8.) On December 14, 2008, the Debtor had a serious medical emergency that resulted in her hospitalization until February 8, 2009, allegedly giving rise to her medical malpractice claim. *See* Mot. ¶ 3. Brooks converted her case to a case under chapter 7 on July 29, 2009. (ECF Doc. # 9.) On September 7, 2009, an amended voluntary chapter 7 petition and amended schedules were filed. (ECF Doc. ## 14 and 15.) The schedules did not disclose any medical malpractice claims.

The Motion asserts that the case was converted to a case under chapter 7 because Brooks was unable to make the chapter 13 plan payments since she could not work as a result of her health problems. *See* Mot. ¶ 3. Upon conversion, John Pereira was appointed as the chapter 7 trustee. At the time of conversion, seven creditors held ten claims totaling $107,548.64. *See*

2

Chapter 13 Standing Trustee's Final Report and Account (ECF Doc. # 17). Debtor's total of scheduled claims was $119,430.37. *See* Mot. ¶ 11. On October 8, 2009, the chapter 7 trustee filed a report of no distribution. An order of discharge was filed on December 11, 2009 (ECF Doc. # 19), and the case was closed on December 12, 2009.

On June 11, 2011, the Debtor commenced a medical malpractice action in New York Supreme Court in the Bronx, but the state court dismissed the case for lack of Brooks' capacity to sue. *See* Mot. Ex. G (*Easley-Brooks v. Lee*, No. 305314/11 at *2 (N.Y. Sup. Ct., Bronx Cty. October 9, 2012) (holding that "non-disclosure of the plaintiff's medical malpractice claim resulted in the closed bankruptcy's estate being the proper party to maintain this action")). The Debtor contends in the Motion that the omission of the medical malpractice claim from her amended schedules was "inadvertent" and was the result of malpractice by the Debtor's prior bankruptcy attorney.[1] She asserts that the state court decision dismissing the case was in error because the bankruptcy case was not converted in bad faith and, as a result, the medical malpractice claim did not become part of the chapter 7 estate. *See* Mot. ¶ 4; Reply ¶ 10. Brooks has appealed the dismissal but has so far not prosecuted the appeal.

Brooks' continued assertion that the conversion was not in bad faith is peculiar in the context of her Motion because her clear purpose in making the motion is to enable the chapter 7 trustee to prosecute the medical malpractice claim; the trustee can do so only if the claim is property of the chapter 7 estate, which, as explained below, only follows if the conversion of the

---

[1] The Debtor commenced a legal malpractice action on December 10, 2012, but has not yet served the attorney. *See* Mot. ¶ 4 n.1. While alleging legal malpractice by her prior bankruptcy attorney, Brooks testified in a deposition in the now-dismissed medical malpractice case that she did *not* tell her bankruptcy counsel that she believed she had a medical malpractice claim. *See* Brooks Dep. 51:4-52:4 (ECF Doc. # 30). Brooks did not file the medical malpractice lawsuit until after her chapter 7 bankruptcy case was closed. As explained in the text, the post-petition medical malpractice claim was part of her chapter 13 estate, but not part of the chapter 7 estate after conversion *unless* the conversion was done in bad faith.

3

case was "in bad faith." The Debtor concedes that the claim is property of the chapter 7 estate. *See* Mot. ¶ 14. The Debtor's counsel in the dismissed state court action is willing to proceed on contingency fee basis if the case is reopened and the appointed trustee elects to proceed. *See* Mot ¶ 17. Despite Brooks' assertion to the contrary, the evidence supports the conclusion that the conversion of her chapter 13 case was in bad faith.

Brooks was deposed in the medical malpractice action before it was dismissed. When responding to questions about when she had knowledge of and a desire to proceed with a medical malpractice action, Brooks testified that during her several months hospital stay beginning in December 2008 she concluded that malpractice had occurred and that she wanted the doctors held accountable. *See* Brooks Dep. 245:2-248:22 (ECF Doc. # 30). Brooks did not tell her bankruptcy counsel about the malpractice claim, and she waited to file the malpractice lawsuit until after she received a discharge and her chapter 7 bankruptcy case was closed. *Id*. 51:4-52:4. Her motive in waiting to file the malpractice lawsuit is clear: in December 2009, she received a bankruptcy discharge wiping out more than $100,000 in claims; she hoped to keep the full amount of any recovery without having to repay any of her prior debts.

Brooks' failure to tell her bankruptcy attorney about the malpractice claim, although she believed she had such a claim, coupled with waiting until after her chapter 7 case was closed to file the malpractice action, is strong evidence that the chapter 13 case was converted in bad faith. The failure to disclose the existence of the claim was significant; if the chapter 13 trustee and the Court[2] were aware of the malpractice claim that was part of the chapter 13 estate at the time of

---

[2]    I was the judge assigned to Brooks' chapter 13 case and, thereafter, remained the judge on the chapter 7 case.

4

conversion, it is likely that conversion would have been challenged since the malpractice action could have provided a source of recovery for creditors.

Chefitz objects to the Motion, contending that the Debtor's alleged bad faith in knowingly violating her duty of disclosure to the bankruptcy court should bar the Debtor from reopening the case; that the defendants would be prejudiced by allowing a trustee to proceed with the malpractice action by substitution as plaintiff (or filing a new action); and that the passage of three years will make a substantial benefit to the creditors unlikely.  *See* Answer Att'y Decl. ¶¶ 12, 14.  In the alternative, if the case is reopened and a trustee substituted for the Debtor, Chefitz contends that the Debtor should be judicially estopped from receiving any surplus by capping damages at the amount of timely filed creditor claims.[3]  *See* Answer ¶ 23.

## II.    DISCUSSION

The issue here is whether the Debtor's chapter 7 case should be reopened and whether the medical malpractice claim is property of the chapter 7 estate.  Because the alleged medical malpractice occurred while the chapter 13 case was pending, the medical malpractice claim was property of the chapter 13 estate.  *See* 11 U.S.C. § 1306(a) ("Property of the estate includes, in addition to the property specified in section 541 of this title—(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title,

---

[3]    The Court does not reach the issue of Chefitz's standing to object because even if he has standing, the Court overrules the objection.  Courts are divided on whether potential defendants to the trustee's claim have standing to object to a motion to reopen.  *See In re Riazuddin*, 363 B.R. 177, 183 (B.A.P. 10th Cir. 2007) (finding that an alleged tortfeasor did not have standing to oppose a motion to reopen a chapter 7 case to add and prosecute a prepetition personal injury claim); *In re Phillips*, 2012 WL 1232008, at *3 (Bankr. D.N.J. Apr. 12, 2012) ("Under both constitutional standing principles and the statutory provisions governing standing under the Bankruptcy Code, the better view is that the defendant is not subject to an injury in fact based upon the reopening of the bankruptcy estate, nor does it hold a 'legally protected interest' that the debtor seeks to affect through the course of the bankruptcy, and is thus not a party in interest.").

5

whichever occurs first . . . ."). As explained below, the issue whether the medical malpractice claim is property of the chapter 7 estate hinges on whether conversion of the case was "in bad faith." *See* 11 U.S.C. § 348(f)(2) ("If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.").

The Court concludes that the conversion here, without disclosure of the medical malpractice claim, was in bad faith; upon reopening of the case, the malpractice claim therefore once again became property of the chapter 7 estate to be administered by the chapter 7 trustee. The Debtor must amend her schedules to list the claim and any asserted exemption. In the event the chapter 7 trustee recovers on the claim and a surplus remains after payment of all allowed claims and administrative expenses, nothing in this ruling precludes the Debtor from recovering any surplus.[4]

---

[4] Courts have recognized that the bad faith of a debtor in failing to disclose an asset should not preclude reopening a case, "but rather that the bad faith of the debtor may be addressed by other methods, such as disallowance of exemptions." *In re Phillips*, 2012 WL 1232008, at *4 (citing *In re Lopez,* 283 B.R. 22, 30 (B.A.P. 9th Cir. 2002)) (internal quotation marks omitted); *see In re Clark,* 274 B.R. 127, 135-38 (Bankr. W.D. Pa. 2002). It will only be necessary to reach this issue if any medical malpractice recovery does not generate sufficient funds to repay all creditor claims and administrative expenses in full.

Generally judicial estoppel does not apply to a trustee's prosecution of an omitted claim: "New York state courts have held that judicial estoppel does not apply when a bankruptcy case is reopened under Section 350. This is because reopening the case nullif[ies] the final determination upon which a judicial estoppel could be predicated." *In re Arana*, 456 B.R. at 171 n.1 (internal quotation marks and citations omitted). However, "if surplus funds remain after these expenses and claims are paid, then a debtor's entitlement to it may be subject to judicial estoppel or other equitable defenses." *In re Arana*, 456 B.R. 161, 171 (Bankr. E.D.N.Y. 2011) (citing *In re Upshur,* 317 B.R. 446, 453 (Bankr. N.D. Ga. 2004)).

**A. The Authority to Reopen a Case is Predicated on General Bankruptcy Policy: Recovery of Creditors and the Relief of Debtors**

*1. Authority to Reopen Generally*

FED. R. BANKR. P. 5010 provides: "A case may be reopened on motion of the debtor . . . pursuant to § 350(b) of the Code." Section 350(b) of the Bankruptcy Code permits the bankruptcy court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The Code does not define "other cause," and the decision to reopen is discretionary. *In re Cruz*, 254 B.R. 801, 804 (Bankr. S.D.N.Y. 2000 (citing *In re Chalasani*, 92 F.3d 1300, 1307 (2d Cir. 1996)). The movant bears the burden to demonstrate cause for reopening the case. *In re Otto*, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004.

In determining whether "cause" exists, the court "may consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." *In re Emmerling*, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997); *In re Moyette*, 231 B.R. 494, 497 (E.D.N.Y. 1999). Factors to consider include:

(1) the length of time that the case was closed,
(2) whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case,
(3) whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum,
(4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen,
(5) the extent of the benefit to the debtor by reopening, and
(6) whether it is clear at the outset that no relief would be forthcoming to the debtor by granting the motion to reopen.

*In re Otto*, 311 B.R. at 47.

*2. The Recovery of Creditors is the Primary Factor When Reopening a Case to Administer an Undisclosed Action*

Cause to reopen a bankruptcy case includes "to administer an undisclosed lawsuit." *In re Upshur*, 317 B.R. at 451. A debtor has standing to move to reopen the case to add the previously

7

undisclosed action to the schedule of assets so a trustee can proceed with the action at its discretion. FED. R. BANKR. P. 5010.

A debtor's bad faith failure to schedule an action does weigh in the decision whether to reopen the case, but several circuits and commentators note that "when the purpose of the motion to reopen is to add an undisclosed asset, the most important consideration is the benefit to the creditors." *See, e.g.*, *In re Arana*, 456 B.R. at 173; *In re Upshur*, 317 B.R. at 450. Given the primacy of the recovery of creditors, "the test for reopening to administer assets is simply whether the administrative expense and inconvenience outweighs the potential benefit to the estate" and "debtor's good faith is irrelevant." *In re Dewberry*, 266 B.R. 916, 921 (Bankr. S.D. Ga. 2001).

When a bankruptcy case has been closed for some time there is a potential that creditors will "be difficult to locate or no longer exist, and for this or other reasons, creditors may decide not to file a proof of claim," making the creditors unlikely to benefit from any distribution of assets after reopening. *In re Arana*, 456 B.R. at 175 (finding the concern of the difficulty of locating creditors to be outweighed by the potential benefit to thirty creditors with a total of $112,862.83 in claims); *In re Lowery*, 398 B.R. 512, 516 (Bankr. E.D.N.Y. 2008) (finding the potential benefit to creditors insufficient to reopen when there were four creditors with aggregate claims of $13,249.90 and ten to fourteen years had passed from the time the claims was incurred).

The potential of prejudice to those obligated to defend the omitted action is another factor. While laches or some particular form of prejudice, other than the burden of defense on the merits, weighs against reopening, the prospect that defendants would receive a windfall at the expense of creditors weighs in favor of reopening. *See In re Arana*, 456 B.R. at 175-77 (finding

8

a lack of prejudice to defendants where the defendants were on notice of the potential action and the motion for reopening was brought "nearly five years after [the] bankruptcy case was closed") (citing 3 COLLIER ON BANKRUPTCY ¶ 350.03[1] at 350–7 ("The bankruptcy case should ordinarily be reopened so the asset can be administered to prevent a windfall to the defendant.")). In this case, the alleged malpractice defendants have known about and vigorously defended the malpractice claim in state court, including taking Brooks' deposition. They had ample opportunity to investigate the claims. The defendants succeeded in getting the case dismissed on grounds other than on the merits of the claims. In these circumstances, the Court concludes that the potential prejudice to the alleged malpractice defendants is small in comparison to the harm caused to the Debtor's creditors if the chapter 7 trustee is not permitted to prosecute the malpractice claim.

### B. The Effect of a Failure to Disclose the Malpractice Claim Prior to Conversion from a Case Under Chapter 13 to a Case Under Chapter 7

#### 1. *The Debtor's Duty of Full Disclosure is Fundamental to the Bankruptcy Process*

Because the full disclosure of the true state of the debtor's affairs is crucial to the bankruptcy function, the benefits of bankruptcy are limited to "[t]he class of honest but unfortunate debtors." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 374 (2007) (internal quotation marks omitted). "[A] debtor's asset schedules are filed under penalty of perjury," and the debtor's failure to comply can result in the revocation of discharge and other civil penalties. *Id.* at 378; 28 U.S.C. § 1746; FED. R. BANKR. P. 1008; *see also* 11 U.S.C. § 727(d) (stating that a debtor's discharge may be revoked if it was obtained by fraud).

Bad faith nondisclosure may be inferred from the record. *In re Lowery*, 398 B.R. at 516 ("As a general proposition, a debtor's failure to satisfy a statutory disclosure duty may be

9

deemed inadvertent or the product of an innocent mistake when the debtor either i) lacks knowledge of the undisclosed matter, or ii) has no motive for its concealment."). Here, the Debtor had both knowledge of the existence of the claim and a motive not to disclose it. By her own testimony, the Debtor knew while she was still hospitalized from December 14, 2008 until February 8, 2009 that she had a malpractice claim and intended to assert it; she admits that she did not disclose the existence of the claim to her bankruptcy counsel; and she waited more than one year after receiving a discharge and the bankruptcy case was closed to file the malpractice lawsuit. In these circumstances, the Court concludes that the conversion of the case was in bad faith because Brooks hoped to keep the full amount of any recovery without repaying any of her prior creditors.

### 2. *A Chapter 7 Estate Converted in Bad Faith Contains Post-petition Assets*

When a chapter 7 case is filed an estate is created including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541. A Chapter 13 estate is broader, however, including both pre- and post-petition §541 property and post-petition earnings of the debtor. 11 U.S.C. § 1306.

When converting a chapter 13 case to a case under chapter 7, the debtor has a duty to file an updated schedule of assets. FED. R. BANKR. P. 1019 (1). Bad faith conversion, such as an intentional failure to disclose assets, affects what property is included in the estate. Typically, "property of the estate in the converted case shall consist of property of the estate, *as of the date of filing* of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A) (emphasis added). However, the estate includes property acquired post-petition because "[i]f the debtor converts a case under chapter 13 . . . to a case under another chapter . . . in *bad faith*, the property of the estate in the converted

10

case shall consist of the property of the estate as of the *date of conversion*." 11 U.S.C. § 348(f)(2) (emphasis added).

Thus lawsuits resulting from causes of action that accrue post-petition but prior to conversion and were not declared in good faith will remain "property of the bankruptcy estate even after the case is closed . . . unless [the action] is administered or abandoned by the trustee." *In re Arana*, 456 B.R. at 170; 11 U.S.C. § 554.

Once a cause of action belongs to the estate, "the Trustee is the real party in interest with exclusive standing." *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001); 11 U.S.C. § 323. The trustee can then either prosecute the action in an appropriate forum, or, when a debtor has pursued malpractice claims in a state court, "the Trustee may succeed her position from [that] point forward." *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1292-93 (11th Cir. 2003) (citing FED. R. CIV. P. 25(c)).

### C.    Application to the Debtor's Case

*1. Reopening the Case Offers Potential Benefit to the Estate and the Factors Relating to Cause Weigh in Favor of Reopening*

Reopening a case to administer newly discovered assets is typically a ministerial act for the benefit of creditors, but, in weighing the decision, if "the underlying complaint is completely lacking in merit, it is not inappropriate for the court to examine the issues, nor is it an abuse of discretion to deny the motion to reopen." *In re Smith*, 400 B.R. 370, 376 (Bankr. E.D.N.Y. 2009), *aff'd,* 426 B.R. 435 (E.D.N.Y. 2010), *aff'd,* 645 F.3d 186 (2d Cir. 2011) (quoting *Arleaux v. Arleaux,* 210 B.R. 148, 149 (8th Cir. B.A.P. 1997)) (internal quotation marks omitted).

Here, the cost-benefit analysis favors reopening the case. *In re Arana*, 456 B.R. at 175 (finding the concern of the difficulty of locating creditors to be outweighed by the potential benefit to thirty creditors with a total of $112,862.83 in claims); *but see In re Lowery*, 398 B.R.

11

at 516 (finding the potential benefit to creditors insufficient to reopen when there were four creditors with aggregate claims of $13,249.90 and ten to fourteen years had passed from the time the claims was incurred). The cost to the estate is low because the Debtor has identified a personal injury firm that is willing to proceed on a contingency basis, assuming the chapter 7 trustee does not select other counsel, or the chapter 7 trustee can elect not to proceed. *See* Mot. ¶ 14. The creditors, with claims totaling $119,430.37, stand to benefit from any recovery in excess of any applicable exemption and administrative expenses. Only three years have passed since the case was closed. The Debtor previously listed only seven creditors, each easily identified and holding substantial claims. *See* Chapter 13 Standing Trustee's Final Report and Account (ECF Doc. # 17). In the event of a substantial medical malpractice claim recovery by the chapter 7 trustee, the creditors may well recover all or a substantial portion of their claims. "[T]he obligation to defend a claim on the merits is not the kind of legal prejudice that should stand in the way of a trustee's administration of property of a bankruptcy estate and this factor, standing alone, should not be a bar to reopening a case." *In re Arana*, 456 B.R. at 174; *see also* 3 COLLIER ON BANKRUPTCY ¶ 350.03[1] (observing that "the bankruptcy case should ordinarily be reopened so the asset can be administered to prevent a windfall to the defendant").

### III. CONCLUSION

For the forgoing reasons, Brooks' Motion to reopen her chapter 7 case was **GRANTED**; the Debtor's medical malpractice claim is property of the chapter 7 estate; and the claim may be administered by the chapter 7 trustee.

**IT IS SO ORDERED.**

Dated:    February 25, 2013
            New York, New York

>         *Martin Glenn*        
> MARTIN GLENN
> United States Bankruptcy Judge